UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
                                               :

ANDREW ASTUTO,                          :

                        Plaintiff,          :      **MEMORANDUM DECISION**

                                                 :      **AND ORDER**

                - against -                  :

                                                   :      18-cv-0112 (BMC)

COMMISSIONER OF SOCIAL SECURITY,     :

                                                   :

                         Defendant.         :

                                                   :

------------------------------------------------------------- X

**COGAN, District Judge.**

1.       Plaintiff seeks review of the decision of the Commissioner of Social Security, following a hearing before an Administrative Law Judge, that he is not disabled for the purpose of receiving disability insurance benefits under the Social Security Act. The ALJ found that plaintiff has severe impairments of degenerative disc disease in his cervical and lumbar spine, and obesity, but that notwithstanding those impairments, he retains sufficient functional capacity to perform "light work" (see 20 C.F.R. § 416.967(b)) with limitations and is therefore not disabled.

2.       I agree with the Commissioner that although plaintiff's brief in this review proceeding purports to raise two points of error, one with subparts, his arguments distill into only one point of error – the ALJ underweighted the opinions of plaintiff's treating physicians, and for that reason, based on the entire record, there is not substantial evidence to support the ALJ's conclusion.

3.       Plaintiff's argument is facially attractive if for no other reason than that plaintiff had, by my count, at least five treating physicians dealing with his back ailment, and there were clearly more.  The sheer volume might imply an impairment of great

severity.  Some of these doctors "treated" plaintiff for two or three months; others for a couple of years.

4.      One of the reasons for so many providers, the record suggests, was that at some point before or during his treatment, he developed a cocaine dependency problem and spent time in prison, and one or more of his doctors barred him from their practice. The ALJ concluded that he had overcome his addiction by the time of the hearing, but it helps explain why there are so many opinions.

5.      Plaintiff's brief concentrates most of its fire on the ALJ's decision that the medical source statement of Dr. Ravi Tikoo, one of plaintiff's treating neurologists, (treated August 8, 2013 through April 17, 2014), should be given "little weight." This is significant because it was the most recent treating physician relationship in relation to the hearing.  (The claimed period of disability began December 19, 2013).  Dr. Tikoo completed a medical source statement on May 5, 2014.

6.      I do not think there is much controversy that if the ALJ had accepted this medical source statement and there was no other evidence in the record, plaintiff would have been deemed disabled.  It was an extremely restrictive statement.  Dr. Tikoo opined that plaintiff had impaired range of motion in both his medical and lumbar spine; that he was 8 or 9 on the pain scale of 10; that the pain did not respond to medication; that plaintiff could neither sit for more than two hours nor stand for than 1 hour in an 8-hour day; that he would have to get up and move around every 10 minutes; that Dr. Tikoo recommended that plaintiff not stand or walk continuously in a work setting; that he could never lift or carry more than 5 lbs. and only occasionally lift or carry up to 5 lbs.; that plaintiff was incapable of tolerating even low work stress; and that plaintiff would be

absent from work three or more times per month. Dr. Tikoo estimated that the limitations existed since February 2010, even though Dr. Tikoo began treating plaintiff in August 2013.

7.    The ALJ essentially rejected Dr. Tikoo's statement because his treatment notes did not support such severe limitations. Plaintiff does not engage the Commissioner on this point – he merely cites back to Dr. Tikoo's source statement and does not offer any argument concerning the treatment notes at all. This may be because the ALJ was right. The treatment notes consistently showed normal or near normal results. The ALJ's summary of those notes is accurate:

> Deep tendon reflexes were 1-2+ throughout and bilaterally symmetrical. Motor examination revealed normal bulk, tone, and strength throughout. There was no atrophy, fasciculations, or adventitious movements noted. Sensory examination was intact to light touch in all extremities. Coordination exam revealed no dysmetria, ataxia, or nystagmus. The patient's gait was normal-based and he performed heel, toe, and tandem walking normally. Subsequent examinations with Dr. Tikoo through April 2014 yielded identical result.

(Citations omitted). Plaintiff does not quarrel with or even mention the ALJ's reading of Dr. Tikoo's notes. Thus, although I do not know where Dr. Tikoo obtained the information upon which he based his highly restrictive medical source statement, it was not his treatment notes. The only other place I can posit is that plaintiff subjectively complained of severe pain and Dr. Tikoo had an MRI that did show moderate disc impairment. But it was still quite a leap for Dr. Tikoo to render such a restricted opinion when his treatment notes did not support it.

8.    Plaintiff complains that the ALJ "did not sufficiently explain his reasoning," but given Dr. Tikoo's treatment notes, that reasoning is self-evident. The

ALJ was well within the treating physician rule in giving this out-of-the-blue opinion little weight.

9.      Of his remaining argument, plaintiff identifies four other "treating" physicians that had rendered monthly reports for plaintiff's worker's compensation carrier as to whose opinions the ALJ did not afford sufficient respect: Dr. Pagaiotis Zenetos (pain management specialist), Dr. Mehrdad Hedayatina (pain management specialist), Dr. Kevin Weiner (physiatrist), and Dr. Isaac Kreizman (pain management specialist).

10.     What stands out in each of their opinions is their expressed conclusion, in one form or another, that plaintiff was "disabled" or "unable to work." That always raises the hackles of the ALJs and the Commissioner. The Commissioner jealously guards the right to make that determination herself as a matter of social security law, not medical science, because the technical definition of disability and its application are not known by most treating physicians.

11.     The result is that ALJs sometimes tune out any medical opinion that features the legal conclusion. That is not necessarily the correct way to proceed. The ALJ can disregard or give little weight to a medical professional's finding of disability, but that does not relieve the ALJ of the obligation to examine the remainder of the doctor's opinion and its basis.

12.     Here, however, the problem with these four additional doctors relied upon by plaintiff is that they did not purport to assess plaintiff's residual functional capacity. Their opinions about his inability to work were provided in the context of worker's

compensation evaluations. They rely upon the concept of "temporary impairment," an unknown standard in social security disability law. Each report is thus a snapshot on a particular day of whether plaintiff was able to return to his prior job.

13.     That was not the issue before the ALJ; indeed, as the ALJ found, plaintiff could never return to his prior work because of his back injury, so there was no controversy as to that. The forms used by the workers' compensation physicians, being geared to determining when or if a claimant can return to work, are only minimally informative as to the five-step sequential analysis that the ALJ undertakes.

14.     Thus, for example, if we take the medical examination forms of Dr. Hedayatina (treated October 2011 through March 2012), we know that on March 7, 2012, Dr. Hedayatnia concluded that plaintiff had decreased range of motion in his lumbar spine and muscle spasms. No one is disputing that in this proceeding. From there, Dr. Hedaytnia concluded that plaintiff could not return to his job. No one is disputing that either. What we do not know from Dr. Hedaytnia, because it wasn't his job to opine on anything other than whether plaintiff could return to his former job, was whether plaintiff has sufficient RFC to do some other job.

15.     Essentially the same conclusions were reiterated from each of the monthly workers' compensation examinations that plaintiff had with Dr. Hedaytnia. From them, the ALJ could discern, and did discern, that plaintiff had a severe back impairment. He could also discern, and did discern, that plaintiff was unable to return to his prior employment during the months he saw Dr. Hedaytnia. But that information sheds little

light on plaintiff's RFC, which is the fundamental question in the application of the five-step sequential analysis of plaintiff's impairment.

16.    Dr. Zenetos's opinions and Dr. Weiner's opinions (treated July 2010-July 2012) were expressed on the same forms of worker's compensation reports, and thus suffer from the same lack of probative value as those of Dr. Hedaytnia.

17.    There is, however, one file memo from Dr. Weiner that has some probative value.  Dr. Weiner read plaintiff's MRI as showing cord compression and severe right foraminal narrowing, among other things.  On the other hand, it was also not insignificant that Dr. Weiner's noted that "[i]t was also discussed with the patient that it is illegal to divert medications being prescribed and to doctor shop.  If it comes to our attention that this occurred, the patient will be discharged from the practice and the appropriate authorities will be notified."

18.    As to Dr. Kreizman (treated May 2011 through July 2011), his opinion that plaintiff was "85% disabled," again uses the language of worker's compensation and has no analogue under the Social Security Act.  Even read most favorably to plaintiff, his notes merely confirm, again, that he has a severe back impairment.

19.    The ALJ discussed each of these four opinions.  As to Drs. Zenetos and Hedayatina, he noted the absence of treatment notes in the record as the basis for giving them little weight.  I see nothing surprising about the absence of treatment notes.  There is no indication that either doctor was "treating" plaintiff aside from continuing his pain killers (or maybe an occasional pain injection).  Plaintiff was showing up once a month or once every two weeks, probably as required by his employer or the Worker's

Compensation Board, for a determination of whether he was ready to resume his prior job.  He wasn't, and the doctors' forms simply reflect that.

20.     The ALJ gave "little weight" to Dr. Kreizman's conclusion of 85% disability, and I can find no fault with that for the reason suggested above.  The ALJ further noted the mixed nature of Dr. Kreizman's evaluations – no tenderness in the upper and middle back, full range of motion there, tenderness in the lumbar spine, and some unspecified restriction on the range of motion in the lower back.  The ALJ also noted that, according to Dr. Kreizman, plaintiff had full strength and ROM in his arms and legs.  I do not see what else plaintiff would have the ALJ draw from this report other than the acknowledged conclusion that plaintiff has a severely impaired lower back.

21.     Because of the multiplicity of doctors from whom plaintiff sought treatment, I reject plaintiff's point that their specialization and longitudinal relationship required the ALJ to give them more weight.  All of plaintiff's doctors had relevant specialties, but he didn't stick with them.  He had five doctors intermittently treating the same condition over five or six years.  The "doctor shopping," as Dr. Weiner referred to it, actually undercuts the notion that any one particular arrangement was entitled to special weight.

22.     The ALJ's opinion was supported by more than the deficiencies in the treating physicians' opinions and the legal principle putting the burden of proof on plaintiff.  The ALJ gave significant weight to two opinions, Dr. Frank Segreto and Dr. Igor Rubinshteyn, both orthopedists who conducted three independent medical

examinations between them.  They found, at most, moderate impairment.  Both of them

independently concluded that plaintiff could lift up to 30 pounds.

23.     These opinions, coupled with other findings specific findings in the

record, constituted substantial evidence that plaintiff is not disabled.  Plaintiff's challenge

to the ALJ's conclusion reflects merely a difference of opinion of how the evidence

should be weighed.  It is not for this Court to substitute its own judgment for that of the

ALJ.

24.     Plaintiff's motion for judgment on the pleadings is denied, and the

Commissioner's motion for judgment on the pleadings is granted.  Judgment shall enter,

dismissing the complaint.

**SO ORDERED.**

_____
                                                U.S.D.J.

Dated: Brooklyn, New York
           February 12, 2019